**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

DOLORES BRACERO,

       Plaintiff,                          Case No. 6:19-cv-01657-WWB-GJK

v.

THE CITY OF ORLANDO,

       Defendant.

_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## AND MEMORANDUM OF LAW IN SUPPORT

    Defendant, the City of Orlando, by and through undersigned counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby moves for summary judgment as to Plaintiff's Amended Complaint (D.E. 21) and, in support thereof, states the following:

### I. INTRODUCTION

    In her Amended Complaint, Plaintiff, Dolores Bracero, seeks damages for alleged violations of the Rehabilitation Act, 29 U.S.C. § 974 (Count I), the Americans with Disabilities Act, 42 U.S.C. § 12111 *et seq.* (Count II), Title VIII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Counts III & V); Section 760.10, Florida Statutes (Counts IV & VI); and Section 440.205, Florida Statutes (Count VII). Broadly speaking, Plaintiff alleges that Defendant has engaged in a pattern or practice of discrimination against female and disabled law enforcement officers and that Defendant retaliated against her for making complaints about discrimination and for submitting workers' compensation claims.

1

SPDN-868764429-2777895

Summary judgment is appropriate for Defendant because: (1) Plaintiff cannot establish that she is disabled or was perceived as disabled, (2) Plaintiff did not suffer an adverse employment action on the basis of her gender or alleged disability, (3) there is no casual connection between Plaintiff's engagement in protected activity and her termination, and (4) Plaintiff was terminated pursuant to a Collective Bargaining Agreement and for legitimate non-discriminatory and non-retaliatory reasons.

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS

The City of Orlando is a Florida municipal corporation providing a wide variety of services to its citizens. One such service is policing, which is provided through the Orlando Police Department ("OPD"). Plaintiff began her employment as a police officer for the OPD on August 16, 2005. (Pl. Depo. Ex. 6, p. 1). OPD officers, such as Plaintiff, are represented by the Orlando Lodge #25, Fraternal Order of Police, Inc. ("FOP"), and as such, Plaintiff is subject to the terms and conditions of the Collective Bargaining Agreement entered into between the OPD and the FOP. (Pl. Depo. pp. 73:10–12, 74:18–21).

On October 27, 2015, Plaintiff sustained an on-the-job injury during a training exercise. (Pl. Depo. Ex. 27, p. 1). That same day, Plaintiff filed a workers' compensation claim.[1] (Pl. Depo. Ex. 5, p. 19; Pl. Depo. p. 126:3–4). On November 10, 2015, Plaintiff was placed on alternative duty. (Pl. Depo. Ex. 17, p. 1). Initially, Plaintiff was assigned to the IRIS room to watch surveillance cameras before being reassigned to the information desk. (Pl. Depo. p. 19:10–12). While on alternative duty, Plaintiff also worked in professional standards and transported individuals to and from the OPD building. (Pl. Depo. p. 19:24–20:4). However, Plaintiff returned

---

[1] Plaintiff filed a second workers' compensation claim on December 17, 2017. (Pl. Depo. Ex. 5, p. 19).

to the information desk after she complained to then-Lieutenant Alejandro Caro that using the assigned vehicle's shifter was difficult because of her injury. (Pl. Depo. p. 117:12–15). Later, Plaintiff began working in information technology ("IT"), where she spent the majority of her alternative duty assignment. (Pl. Depo. p. 20:4–7).

Plaintiff was responsible for directing and managing the delivery of IT equipment, computer training, and compliance as part of a new computer rollout project. (Pl. Depo. p. 18:4–18). Due to the limited space in IT, Plaintiff was given an office previously used as storage space. (Pl. Depo. p. 22:16–17; Pl. Depo. Ex. 8, p. 1). However, the office was revamped with the addition of new flooring and furniture, and unused computer equipment was removed from the office. (Pl. Depo. pp. 125:19–25, 126:8–10; Pl. Depo. Ex. 14, p. 1). Plaintiff's duties also involved her travelling to the training center to distribute laptops. (Pl. Depo. p. 24:13–14). While the OPD maintained a policy of reimbursing employees for mileage should they use their personal vehicle for work, Plaintiff opted not to seek reimbursement for her travel to the training center. (Pl. Depo. pp. 25:12–13, 25:21–23, 190:4–6, 190:10–12).

On August 9, 2016, Plaintiff was notified in a memorandum from Deputy Chief Eric Smith that pursuant to OPD Policy & Procedure 1619.5, employees on alternative duty for one continuous year or for twelve cumulative months in an eighteen-month period would be required to return to full duty or would otherwise be terminated. (Pl. Depo. Ex. 17, p. 1). Moreover, the memorandum noted that Article 23.6 of the Collective Bargaining Agreement prevents an employee from being terminated within 180 days from the date of their disability pension application. (Pl. Depo. Ex. 17, p. 2). Based on these deadlines, Plaintiff would be terminated on November 10, 2016, unless she returned to full-time duty or applied for a disability pension. (Pl.

3

Depo. Ex. 17, p. 2). Therefore, Plaintiff filed an application for a disability pension on September 1, 2016. (Pl. Depo. Ex. 6, p. 1; Pl. Depo. Ex. 27, p. 1).

Officers of the OPD who are permanently and totally disabled may apply for a disability pension under the Police Pension Plan. Orlando, Florida, Municipal Code Ch. 12, Art. 1, § 8. The administration of the Police Pension Plan is vested with the Board of Trustees (the "Board"). Orlando, Florida, Municipal Code Ch. 12, Art. 1, § 3. Notably, the Board is a separate legal entity from the OPD with "all powers and responsibilities conferred upon it by law including the power to bring and defend lawsuits of every kind, nature and description." Orlando, Florida, Municipal Code Ch. 12, Art. 1, § 2; *see also* (Pl. Depo. p. 39:17-20).

On February 28, 2017, Plaintiff requested a permanent limited duty assignment based on her expectation that her rehabilitation would last for an extended period of time. (Pl. Depo. Ex. 20, p. 1; Pl. Depo. p. 94:12–17). On March 6, 2017, Plaintiff's application for a permanent limited duty assignment was granted, which provided additional time for her to rehabilitate and return to full duty. (Pl. Depo. Ex. 16, pp. 1–2). Permanent limited duty assignments are provided without a reduction in pay or benefits for sworn members, like Plaintiff, who have applied for a disability pension. (Quinn-Henry Decl. Ex. B, p. 2). However, once on permanent duty, Plaintiff was no longer eligible for a disability pension until she refiled her application indicating a change in her medical condition or she was no longer on permanent limited duty. (Pl. Depo. Ex. 16, p. 2); *see also* Orlando, Florida, Municipal Code Ch. 12 Art. 1 § 8  (noting that the Board may deny a disability pension if the employee is permitted to remain employed in limited duty role with no reduction in pay or benefits).

The OPD's alternative duty assignment policy provides that those on alternative duty for longer than thirty days are not permitted to participate in the assigned vehicle program, which

allows officers to take work vehicles home. (Quinn-Henry Decl. Ex. B, p. 2). Nonetheless, Plaintiff received permission from Deputy Chief Mark Canty to use a vehicle assigned to the Recruiting Section during work hours. (Pl. Depo. Ex. 14, p. 1).

In 2017, Plaintiff took the Sergeant's exam, which is administered once every two years, and was added to the Sergeant's Promotional List. (Pl. Depo. Ex. 9, p. 1). The sergeant position is a sworn law enforcement officer position requiring, among other things, skill in the use of firearms. (Pl. Depo. p. 31:5–10, 197:8–14; Pl. Depo. Ex. 32, p. 3; Pl. Depo. Ex. 33, p. 1). Law enforcement officers, including sergeants, are required under Florida law to meet the firearms qualifications every two years, which Plaintiff had not done. (Pl. Depo. pp. 30:25–31:10; Pl. Depo. Ex. 21, p. 1). While Plaintiff scored well enough on the exam to be placed on the Sergeant's Promotional List, the exam is only one factor considered in making promotion determinations. (Quinn-Henry Decl. ¶ 7). Other factors, including experience and demonstrated leadership capabilities, are considered in making promotion decisions. (Quinn-Henry Decl. ¶ 8). Ultimately, Plaintiff was not promoted to sergeant due to the fact that Plaintiff was unable to satisfy the statutorily required firearms qualification. (Pl. Depo. p. 31:5–10).

On December 4, 2017, Plaintiff resubmitted to the Board her Application for Disability Pension relating to the injury she sustained on October 27, 2015. (Pl. Depo. Ex. 27, p. 1). On January 3, 2018, Plaintiff requested an extension to submit her pension binder. (Quinn-Henry Decl. Ex. D, p. 1). On February 12, 2018, the OPD submitted to the Board its Notice of Review Regarding Availability of Permanent Light Duty Position, which stated that the Chief of Police had advised that there was a full-time alternative duty position available to Plaintiff without a reduction in pay or benefits. (Pl. Depo. Ex. 19, p. 1). On May 10, 2018, Plaintiff requested another extension to complete her pension binder. (Quinn-Henry Decl. Ex. E, p. 1). At a June 26, 2018

5

meeting of the Board, Plaintiff requested an additional 60-day extension, which was granted. (Quinn-Henry Decl. Ex. F, p. 1).

On May 18, 2018, Plaintiff underwent a Functional Medicine Evaluation performed by Dr. Dan Gersteinblitt. (Pl. Depo. Ex. 18). Dr. Gersteinblitt opined that Plaintiff was "significantly self-limited in the functional testing" and that the test results "d[id] not correlate to the objective clinical findings and are an underestimate of functional abilities." (Pl. Depo. Ex. 18, p. 2). Ultimately, Dr. Gersteinblitt concluded that Plaintiff could return to work with few restrictions. (Pl. Depo. Ex. 18, p. 2). On November 20, 2018, Dr. Jerry A. Rubin, M.D. performed an Independent Medical Evaluation of Plaintiff's injury. (Pl. Depo. Ex. 7).[2] Dr. Rubin opined that Plaintiff gave submaximal effort and magnified her symptoms during her examination. (PL. Depo. Ex. 7, p. 5). Dr. Rubin assigned Plaintiff a 0% permanent impairment rating and concluded that "[d]ue to a lack of abnormal objective findings on imaging studies and physical exam and due to apparent submaximal effort on functional strength testing, I would recommend that [Plaintiff] be released to a trial of full duty status at work." (Pl. Depo. Ex. 7, p. 5). These findings were later adopted by Dr. Barry Portnoy, who opined that Plaintiff was cleared for duty without restrictions. (Pl. Depo. Ex. 25, p. 1).

On June 19, 2018, Plaintiff filed a Charge of Discrimination against the OPD, alleging that she was denied her pension, refused reasonable accommodations, and denied a promotion based on her gender, disability, and in retaliation for her accommodation requests. (Pl. Depo. Ex. 5, p. 27–28). Notably, Plaintiff never amended her Charge of Discrimination to include her termination. (Pl. Depo. Ex. 5, p. 27–28). Ultimately, the Equal Employment Opportunity Commission

---

[2] Dr. Rubin performed the examination at the behest of the Board, which may require pension applicants to submit to examinations by physicians of their choice. (Quinn-Henry Decl. ¶ 12; Quinn-Henry Decl. Ex. C, p. 5).

("EEOC") determined that it was unable to conclude that the information provided by Plaintiff established any violations of law. (Pl. Depo. Ex. 5, p. 23).

On May 17, 2019, the Board held a hearing on Plaintiff's Disability Pension Application. (Pl. Depo. Ex. 6, p. 1). After evaluating the medical opinions provided from Plaintiff's doctor, Dr. W. Clark Davenport; Dr. Gersteinblitt; Dr. Rubin; and the depositions of Dr. Rubin and Dr. Gersteinblitt, the Board denied Plaintiff's Application. (Pl. Depo. Ex. 6, pp. 1–2, 4, 6). Specifically, the Board found a lack of objective findings and a lack of injury present in Plaintiff's MRI to support her claim that she was permanently and totally disabled. (Pl. Depo. Ex. 6, pp. 3–4). Instead, the Board credited the medical evidence provided by Dr. Gersteinblitt and Dr. Rubin and concluded that the preponderance of the evidence supported their conclusions that Plaintiff was not permanently and totally disabled. (Pl. Depo. Ex. 6, p. 4). While Plaintiff was afforded the opportunity to appeal the decision of the Board to Nineth Judicial Circuit, she declined to do so. (Pl. Depo. p. 40:1–14; Pl. Depo. Ex. 6, p. 6).

After Plaintiff's disability pension was denied, she was offered an opportunity to return to full duty. (Pl. Depo. Ex. 6, p. 4). Plaintiff did not return to full duty, and on May 30, 2019, she was terminated pursuant to Article 23.6 of the Collective Bargaining Agreement, which provides that if an employee's disability pension is denied and the employee does not request to return to full duty, he or she "will be terminated on the last day of the month in which the final board decision was rendered." (Pl. Depo. pp. 13:19–21, 178:3–25; Pl. Depo. Ex. 26, p. 2).

### III. LEGAL STANDARD

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although the moving party bears the burden of meeting this standard, "the Court must be

mindful of the purpose of Rule 56 which is to eliminate the needless delay and expense to the parties and to the Court occasioned by an unnecessary trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "Consequently, the non-moving party cannot merely rest upon bare assertions, conclusory allegations, surmises or conjectures." *Id.*

## IV. ARGUMENT

### A. Plaintiff's Pension Application was Denied by the Board, a Separate Legal Entity from Defendant

As an initial matter, Plaintiff's claims, to the extent they rely on the denial of her Disability Pension Application, are without merit because the Board denied Plaintiff's Pension Application, not Defendant. The administration of the Police Pension Plan is vested exclusively with the Board. Orlando, Florida, Municipal Code Ch. 12, Art. 1, § 3. Moreover, the Board is a separate legal entity from the OPD with "all powers and responsibilities conferred upon it by law including the power to bring and defend lawsuits of every kind, nature and description." Orlando, Florida, Municipal Code Ch. 12, Art. 1, § 2; *see also* (Pl. Depo. p. 39:17-20). Significantly, Plaintiff did not name the Board in this suit, and she has not and cannot establish that Defendant plays any role in the Board's determination of whether a pension application is granted. Therefore, Plaintiff's pension denial cannot serve as a basis for any claims asserted against Defendant.

Moreover, Plaintiff's claim that the administration of the Police Pension Plan is discriminatory in that female officers are placed on alternative duty while male officers are given pensions in unsupported by the record evidence. For instance, a male police officer, Brett Licciardello, was denied a disability pension because he was offered an alternative duty assignment. (Pl. Depo. Ex. 23, p. 4). This is not an isolated example; since 2011, at least two other

male police officers were denied pensions for some reason. (Pl. Depo. Ex. 24, p. 1).[3] Additionally, multiple women have been granted pensions during this period. (Pl. Depo. p. 73:1–9; Pl. Depo. Ex. 24, p. 1, 3).[4] [5]

Lastly, Plaintiff's application for a disability pension was denied because credible medical evidence established that she was not permanently and totally disabled. After evaluating all of the evidence provided, the Board found that evidence supported Dr. Gersteinblitt and Dr. Rubin's conclusion that Plaintiff was not permanently and totally disabled. In its Final Order, the Board cited to Florida case law establishing that it could rely on the opinions of Dr. Gersteinblitt and Dr. Rubin, even if they conflicted with other doctors' opinions. (Pl. Depo. Ex. 6, p. 3 (citing *Pompano Beach Police & Firemen's Pension Fund v. Franza*, 405 So. 2d 446 (Fla. 4th DCA 1981))). In *Franza*, the Fourth DCA noted concluded that the pension board could rest its decision on the testimony of one doctor despite the fact that his opinion conflicted with the opinion of other doctors. 405 So. 2d at 447. Thus, Plaintiff's Disability Pension Application was denied based on legitimate, non-discriminatory reasons.

**B. Plaintiff Cannot Establish a *Prima Facie* Case under the Rehabilitation Act or under the ADA**

Summary judgment should be entered in Defendant's favor as to Counts I and II of Plaintiff's Complaint because Plaintiff cannot establish her *prima facie* case under the Rehabilitation Act or under the Americans with Disabilities Act ("ADA"). To establish a *prima facie* case under Section 504 of Rehabilitation Act or Title II of the ADA, a plaintiff must show: (1) that she is a qualified individual, (2) excluded from participating in a public entity's services,

---

[3] Those officers include Christopher Brilliant and William Gipson.
[4] Those officers include Marlene Candelaria, Alison Clarke, and Audrey White.
[5] In September 2019, Defendant eliminated permanent limited duty positions, and those officers reapplied for pensions. (Quinn-Henry Decl. ¶ 11).

programs, or activities, (3) because of her disability. *Nat'l Ass'n of Deaf v. State*, 318 F. Supp. 3d 1338, 1348 (S.D. Fla. 2018), *aff'd sub nom. Nat'l Ass'n of the Deaf v. Florida*, 945 F.3d 1339 (11th Cir. 2020). Here, Plaintiff cannot demonstrate that she is disabled, as defined under the Rehabilitation Act or the ADA.

The Rehabilitation Act incorporates the ADA's definition of a "disability." *See* 29 U.S.C. § 705(9)(B) (providing that the term "disability" for purposes of Section 794 has "the meaning given it in" 42 U.S.C. § 12102). Under the ADA, "disability" means "with respect to an individual—(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *See* 42 U.S.C. § 12102(1); *see also Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000) (discussing the definition of a disability in the context of the Rehabilitation Act). The ADA defines a disability as a "physical or mental impairment that substantially limits one or more of the major life activities of the individual." 42 U.S.C. § 12102(2). Major life activities are "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Rossbach v. City of Miami*, 371 F.3d 1354, 1359 (11th Cir. 2004). Instead, a plaintiff must demonstrate that he or she was "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i).

Here, Plaintiff has not and cannot demonstrate that she is substantially limited in any major life activity. Plaintiff's Amended Complaint states that her condition severely impacts her ability to live and work. (Pl. Depo. Ex. 5, p. 4). Plaintiff does not specify what she means by living, which

itself is not a major life activity. *See United States v. Happy Time Day Care Ctr.*, 6 F. Supp. 2d 1073, 1081 (W.D. Wis. 1998); *Parker v. Zimmer, Inc.*, No. 3:06-CV-767 PPS, 2008 WL 2945953, at *5 (N.D. Ind. July 24, 2008). As for working, Plaintiff has not demonstrated that she is significantly restricted from performing a broad range of jobs. The Eleventh Circuit concluded in *Rossbach* that a law enforcement officer placed on limited duty was not disabled or regarded as disabled, despite the officer's contention that he was substantially limited in his ability to be a police officer, because "police officer" is too narrow a range of jobs to constitute a "class of jobs." 317 F.3d at 1361. Even if Plaintiff was unable to perform her duties as a law enforcement officer, it is uncontroverted that Plaintiff was able to perform the duties of her alternative duty positions, demonstrating that she was not substantially limited in the major life activity of working.

Significantly, Dr. Rubin and Dr. Portnoy concluded that Plaintiff was able to return to work without restriction. Contrary to the conclusory allegations in her Amended Complaint, Dr. Rubin found that Plaintiff had a permanent impairment rating of 0%. Moreover, since March 2020, Plaintiff has been working for the Florida Department of Financial Services, and she has engaged in extensive recreational travel since her injury. (Pl. Depo. p. 9:7–13, 32:21–37:4; Pl. Depo. Ex. 3, p. 1–37). Thus, Plaintiff has failed to establish that she is disabled, and her claims under the Rehabilitation Act and the ADA fail.

To the extent that Plaintiff argues she was perceived as disabled, her claims still fail because she was offered an opportunity to return to her position as a police officer, which she declined to take. *See Butler v. Greif Bros. Service Corp.*, 231 F. App'x 854, 857 (11th Cir. Apr. 30, 2007) (concluding that where an employer offered to let an employee return to work if he could obtain a release from his doctor, the evidence, at most, established that employer perceived employee as unable to perform only his particular job); *see also Mickens v. Polk Cty. Sch. Bd.*, 430

F. Supp. 2d 1265, 1276 (M.D. Fla. 2006), *aff'd*, 195 F. App'x 928 (11th Cir. 2006) ("As a matter of law, a person is not regarded as disabled under the ADA simply because his employer considers him unable to perform one job."); *Rossbach*, 317 F.3d at 1361 (rejecting "regarded as" disabled claim under the ADA where law enforcement officer was placed on limited duty, noting that the plaintiff was only able to show that he was regarded as being unable to perform a single, particular job). Because Plaintiff is not disabled or regarded as disabled, she cannot satisfy her *prima facie* case under the Rehabilitation Act or under the ADA, and summary judgment should be entered in favor of Defendant as to Counts I and II.

## C. Plaintiff Cannot Establish a *Prima Facie* Case of Gender Discrimination or Retaliation under Title VII or under the FCRA

Summary judgment should be entered in Defendant's favor as to Counts III, IV, V and VI of Plaintiff's Complaint because Plaintiff cannot establish her *prima facie* case of gender discrimination or retaliation under the Title VII or the Florida Civil Rights Act ("FCRA").

When analyzing claims based upon circumstantial evidence, courts employ the burden shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Rice-Lamar v. City of Fort Lauderdale*, 853 So. 2d 1125, 1132 (Fla. 4th DCA 2003).[6] Under this framework, the plaintiff has the initial burden to establish, by a preponderance of the evidence, a *prima facie* case of discrimination or retaliation. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). If the plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate reason for the employment action. *Rice-Lamar*, 853 So. 2d at 1133. This burden of rebuttal "is merely one of production, not persuasion, and is exceedingly

---

[6] The FCRA is patterned after federal law, Title VII of the Civil Rights Act of 1964, and Florida courts have determined that federal discrimination law should be used as guidance when construing its provisions. *See Fla. State Univ. v. Sondel*, 685 So. 2d 923, n.1 (Fla. 1st DCA 1996).

light." *Mont-Ros v. City of W. Miami*, 111 F. Supp. 2d 1338, 1349–50 (S.D. Fla. 2000). Once the employer meets that burden of production, the Plaintiff must prove, by a preponderance of the evidence, that the reasons provided by the employer for its actions are a pretext for prohibited discriminatory or retaliatory conduct. *Goldsmith v. Bagby Elevator Co., Inc*., 513 F. 3d 1261,1277 (11th Cir. 2008); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). The ultimate burden of proving discrimination or retaliation rests always with Plaintiff. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993).

In order to establish a *prima face* case of discrimination, the Plaintiff must prove by a preponderance of the evidence: (l) that she is a member of a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated employees outside of her class more favorably; and (4) she was qualified to do the job. *See Stinson v. Pub. Serv. Tel. Co.*, 486 F. App'x 8, 9–10 (11th Cir. 2012); *McCann v. Tillman*, 526 F. 3d 1370, 1373 (11th Cir. 2008). Similarly, to establish a claim of retaliation, Plaintiff must demonstrate that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse action; and (3) there is a causal connection between the adverse action and the protected activity. *Jones v. Lumberjack Meats*, 680 F.2d 98, 101 (11th Cir. 1982); *see also Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1454 (11th Cir. 1998). Here, Plaintiff cannot establish that she was subjected to an adverse employment action or that she was treated less favorably than similarly situated employees, and thus, Defendant is entitled to summary judgment on her discrimination and retaliation claims.

1.  Alternative Duty Assignments

Plaintiff claims she was discriminated and retaliated against based upon the alternative duty assignments she received. However, alternative duty assignments are governed by the Collective Bargaining Agreement and not the individual employee's choice. (Pl. Depo. p. 84:1–3). Under the

Collective Bargaining Agreement, alternative duty assignments are based on the discretion of the Chief of Police. In making this determination, various factors are considered, such as: (1) position availability, (2) the employee's knowledge and skillset, and (3) the employee's medical restrictions. (Quinn-Henry Decl. ¶ 9). In her deposition, Plaintiff complained that she was not assigned to the Criminal Investigation Division while on alternative duty and that she was switched to working day shifts while on alternative duty. (Pl. Depo. pp. 55:4–7, 82:16–21). However, Plaintiff admitted that she knew of no one who was placed in the Criminal Investigation Division ("CID") while on alternative duty who had not been previously assigned to CID and admitted that she had not previously been assigned to CID. (Pl. Depo. pp. 55:11–12, 56:22–24). Moreover, only one alternative duty position, the IRIS room, provided for night shifts, and Plaintiff did not request that she be scheduled for night shifts. (Pl. Depo. pp. 83:18–84:5).

Plaintiff cannot state a claim under either the Title VII or the FCRA for not receiving her allegedly preferred alternative duty assignment, especially where the assignments given to her did not result in a loss of pay or benefits. *See Pennington v. City of Huntsville, Ala.*, 93 F. Supp. 2d 1201, 1215 (N.D. Ala. 2000), *aff'd sub nom. Pennington v. City of Huntsville*, 261 F.3d 1262 (11th Cir. 2001) (concluding that plaintiff's failure to be assigned to his preferred location was not an adverse employment action); *Gloetzner v. Lynch*, 225 F. Supp. 3d 1329, 1364 (N.D. Fla. 2016) (same); *Batley v. Bishop State Cmty. Coll.*, No. CV 17-0112-CG-MU, 2017 WL 4019453, at *9 (S.D. Ala. Aug. 14, 2017), *report and recommendation adopted*, 2017 WL 4019435 (S.D. Ala. Sept. 12, 2017) (concluding that plaintiff failed to allege an adverse employment action where he was not given his preferred schedule but the decision did not affect his pay, benefits, or workload).

Here, Plaintiff maintained her existing pay and benefits when she was placed in alternative duty, and her compensation and benefits were not impacted by what type of alternative duty

assignment she received. In fact, the OPD created a sworn position for Plaintiff so that she could maintain her current pay and benefits. (Pl. Depo. p. 69:5–6). Thus, Plaintiff cannot demonstrate that her light duty assignments constituted an adverse employment action.

2.   Assigned Vehicle

Plaintiff alleges that she was discriminated against on the basis of her gender by not being allowed to have a take home vehicle. As an initial matter, the OPD's alternative duty assignment policy prohibits those on alternative duty for longer than thirty days from participating in the assigned vehicle program.[7] This policy applies to all employees on alternative duty, regardless of gender.

Nonetheless, Plaintiff was permitted to use a vehicle assigned to the Recruiting Section during work hours. While Plaintiff alleges that there was a period of time during which she was not assigned a vehicle to use during working hours, Plaintiff was eligible for reimbursement for the use of her private vehicle. Thus, when Plaintiff was not assigned a vehicle, she had the opportunity to be reimbursed for the use of her private vehicle, but she voluntarily chose not to seek reimbursement.

Lastly, courts have concluded that the loss of the use of a take home vehicle, without more, is not an adverse employment action. *See e.g.*, *Brook as Tr. of Estate of Waiters v. City of Palmetto*, No. 8:01-CV-2430-T-26TBM, 2005 WL 8160162, at *7 (M.D. Fla. July 15, 2005); *Bush-Butler v. Mayor & Alderman of the City of Savannah*, No. CV415-212, 2016 WL 5724442, at *5 (S.D. Ga. Sept. 29, 2016). Thus, Plaintiff has not demonstrated that she suffered an adverse employment

---

[7] The only exception is Kimberly Brewster, a female officer who was already on alternative duty prior to the implementation of this policy in 2015 was allowed to keep her assigned vehicle. (Quinn-Henry Decl. ¶ 10).

action based on the OPD's decision not to assign her a take home vehicle, which was done in conformity with its established policies and procedures.

    3.  <u>Training</u>

    Plaintiff claims that she was discriminated against on the basis of her gender because she had a training cancelled by her supervisor. (Pl. Depo. Ex. 5, p. 11). However, Plaintiff was not initially approved for the training, and she was able to attend the training at a later date. (Pl. Depo. 58:17–23, 59:6–10). Even if Plaintiff's training was cancelled, that would not rise to the level of an adverse employment action necessary to state a claim of discrimination under Title VII or the FCRA. *See Rowe v. Intercontinental Hotels Corp.*, No. 1:07-CV-0157-TCB-JFK, 2008 WL 11407249, at *10 (N.D. Ga. June 11, 2008), *report and recommendation adopted*, 2008 WL 11407250 (N.D. Ga. July 18, 2008) (concluding that plaintiff's failure to take a training course was not an adverse employment action where it did not negatively impact her job in a material way). Plaintiff has not and cannot show that the delay in her training resulted in any tangible, adverse effects to her employment. Thus, Plaintiff has failed to demonstrate that she suffered an adverse employment action with regard to the training.

    4.  <u>Performance Reviews and Compensation</u>

    Plaintiff claims she was discriminated against based on her gender because she was not given authentic, substantive performance reviews and was subject to a biased compensation system. (Pl. Depo. Ex. 5, pp. 10–11, 13–14). However, an employer's failure to give performance evaluations to employees is not an adverse employment action where pay raises are not tied to such evaluations. *See Davy v. Star Packaging Corp.*, No. 1:10-CV-3012-SCJ-CCH, 2011 WL 13135128, at *16 (N.D. Ga. Dec. 20, 2011), *report and recommendation adopted sub nom. Miller v. Star Packaging Corp.*, No. 1:10-CV-3012-SCJ, 2012 WL 12897084 (N.D. Ga. Jan. 27, 2012),

*aff'd in part, appeal denied in part sub nom. Davy v. Star Packaging Corp.*, 517 F. App'x 874 (11th Cir. 2013). Even negative performance evaluations are not considered to be adverse employment actions if they do not affect the terms and conditions of employment, such as pay. *See Martin v. Eli Lilly & Co.*, 702 F. App'x 952, 956 (11th Cir. 2017).

Here, Plaintiff's compensation is governed by the Collective Bargaining Agreement, not performance reviews.  Specifically, Article 43 of the Collective Bargaining Agreement provides for a pay plan in which officers' compensation is based upon their respective grade, without consideration for their performance reviews. (Quinn-Henry Decl. ¶ 6; Quinn-Henry Decl. Ex. A, 84–88). In fact, Plaintiff still received pay raises despite her allegations that she did not receive authentic performance evaluations. (Pl. Depo. pp. 53:21–22, 54:2–3). Thus, Plaintiff's alleged failure to receive authentic, substantive performance reviews is not an adverse employment action. Likewise, Plaintiff's claim that she was subjected to a biased compensation system is without merit as all compensation determinations are made pursuant to the Collective Bargaining Agreement, which is applied without regard to an individual employee's gender. (Pl. Depo. p. 73:10–12).

5. Promotion

Plaintiff cannot state a claim for discrimination on the basis of not obtaining a promotion because Plaintiff was not qualified for the sergeant position. To establish a *prima facie* case of discriminatory failure to promote, a plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for and applied for the promotion; (3) she was rejected despite her qualifications; and (4) another equally or less qualified person who was not a member of her protected class was selected. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004), *abrogated on other grounds by Lewis v. Union City,* 918 F.3d 1213, 1218 (11th Cir. 2019) (en banc).

Here, Plaintiff was not qualified for promotion to sergeant because, according to her testimony, she is unable to handle a firearm.  Section 943.10(1), Florida Statutes, defines a law enforcement officer as any person "employed full time by any municipality . . . who is vested with authority to bear arms and make arrests; and whose primary responsibility is the prevention and detection of crime or the enforcement of the penal, criminal, traffic, or highway laws of Florida." Pursuant to Florida Administrative Code 11B-27.00212(14), every two years a law enforcement officer shall be required to demonstrate proficiency under the required firearms qualifications standard. If an officer fails to do so, he or she "shall not perform the duties of a sworn officer." 11B-27.00212(14)(a), Fla. Admin. Code. The position of sergeant is a sworn position requiring an individual in the position to be proficient in the use of police weaponry. Thus, Plaintiff was not qualified for the position because she was unable to demonstrate a proficiency in firearms, as required by Florida law. *See Collins v. Bd. of Trustees of Univ. of Ala.*, 211 F. App'x 848, 850 (11th Cir. 2006) (finding that plaintiff was not qualified for promotion where he did not have the requisite degree, which was an explicit requirement for the position); *Wu v. Thomas*, 847 F.2d 1480, 1484 (11th Cir. 1988), *cert. denied*, 490 U.S. 1006 (1989) (plaintiff failed to show she was qualified when she did not meet all of the required criteria for promotion set forth in employer's handbook). Plaintiff even admitted that the sergeant position required demonstrating a proficiency in firearms and that she was unable to do so. (Pl. Depo. pp. 30:25–31:10). Moreover, when offered an opportunity to return to her former position as a police officer, Plaintiff refused to go through the requisite training, which included firearms trainings.

Moreover, Plaintiff has not identified, nor is there, a reasonable accommodation that could be provided to her under these circumstances. The Eleventh Circuit has made clear that accommodations that eliminate an essential function of a position or that violate internal policies

or collective bargaining agreements are categorically unreasonable. *See Shepard v. United Parcel Serv., Inc.*, 470 F. App'x 726, 730 (11th Cir. 2012); *Davis v. Fla. Power & Light Co.*, 205 F.3d 1301, 1307 (11th Cir. 2000); *Duckett v. Dunlop Tire Corp.*, 120 F.3d 1222, 1225 (11th Cir. 1997); *Anderson v. Embarq/Sprint*, 379 F. App'x 924, 928 (11th Cir. 2010) (holding that requesting forklift work only in a position that required lifting boxes up to seventy pounds was unreasonable because the requested accommodation "would eliminate an essential function of [the] job").

Proficiency in the use of firearms is an express and essential requirement as a matter of law for individuals applying to become a sergeant, especially where the position entails confronting and apprehending suspects. (Pl. Depo. Ex. 32, p. 1). Providing Plaintiff an accommodation by exempting her from demonstrating a proficiency in firearms would eliminate an essential function of the sergeant position. *See Frazier v. Simmons*, 254 F.3d 1247, 1261 (10th Cir. 2001) (rejecting plaintiff's argument that the department of corrections could accommodate his inability to use a firearm by restructuring his essential job functions). Therefore, Plaintiff cannot state a claim for discrimination based on not obtaining a promotion because she is not qualified for the sergeant position.

6. <u>Termination</u>

Plaintiff's claims under Title VII and the FCRA, to the extent they rely on her termination, are without merit because Plaintiff failed to amend her Charge of Discrimination after she was terminated. Before filing a civil complaint alleging violations of Title VII, an employee must exhaust his administrative remedies by first filing a timely charge of discrimination with the EEOC. *Stamper v. Duval Cty. Sch. Bd.*, 863 F.3d 1336, 1339 (11th Cir. 2017); *see also Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1850 (2019) (noting that although Title VII's charge-filing requirement is a mandatory, it is not a jurisdictional). The purpose of the exhaustion requirement

is to allow the EEOC "the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004). Given the importance of the exhaustion requirement, a plaintiff's civil complaint under Title VII "is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* at 1280. In determining whether a complaint falls within the scope of the EEOC charge, we consider whether the complaint is "like or related to, or grew out of, the allegations contained in [the] EEOC charge." *Id.*

In Plaintiff's Amended Complaint, she alleges that she was terminated in retaliation for complaining about the OPD's policies, filing a Charge of Discrimination with the EEOC and the City of Orlando Office of Human Relations, and filing a worker's compensation claim. (Pl. Depo. Ex. 5, pp. 16, 18). However, Plaintiff's EEOC Charge of Discrimination was filed prior to her termination, and Plaintiff neglected to amend it to include her termination. Consequently, Plaintiff cannot now allege violations of Title VII and the FCRA based on her termination. *See Tlemcani v. Ga. Dep't of Cmty. Health*, No. 1:17-CV-2547-TWT-JSA, 2018 WL 3581133, at *10 (N.D. Ga. June 15, 2018), *report and recommendation adopted*, 2018 WL 3575074 (N.D. Ga. July 24, 2018) (concluding that plaintiff abandoned his argument regarding suspension where he failed to include it in his charge of discrimination); *see also Martin v. Eli Lilly & Co.*, No. 1:12-CV-1623-CAP, 2014 WL 11822758, at *5 (N.D. Ga. Sept. 22, 2014) (concluding that court could not entertain a claim of discrimination based on plaintiff's termination where the termination was not alleged in the charge of discrimination).

Moreover, it is worth noting that Plaintiff filed her Charge of Discrimination approximately eleven months prior to her termination, and thus, there is no causal connection between the two to

support a claim for retaliation. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (citing with approval circuit court cases invalidating temporal proximities of three and four months).

      7.  Similarly Situated Employees

While Plaintiff is the member of a protected class and she was terminated, Plaintiff cannot establish her *prima facie* case because she cannot show that similarly situated employees outside of her protected class were treated more favorably. In order to establish the "similarly situated" prong of his *prima facie* case, Plaintiff must identify an employee who is not female and who is "similarly situated in all material respects" that was treated more favorably. *Lewis v. City of Union City*, 918 F.3d 1213, 1226 (11th Cir. 2019). In *Lewis*, the Eleventh Circuit held that the "sorts of similarities that will, in the main, underlie a valid comparison" will continue to include: engaging in the same basic misconduct, being subject to the same employment policy, being supervised by the same supervisor, sharing the same employment or disciplinary history. *Id.* at 1227–28. Ultimately, "comparators must be sufficiently similar, in an objective sense, that they 'cannot reasonably be distinguished.'" *Id.* (quoting *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1355 (2015)). Here, Plaintiff has failed to identify any male police officers who received a disability pension despite not being permanently and totally disabled. Accordingly, Plaintiff cannot establish her *prima facie* case for discrimination, and summary judgment should be entered in favor of Defendant as to those claims.

**D.  Plaintiff was Terminated for Legitimate, Non-Retaliatory Reasons**

Even if Plaintiff could rely on her termination to support her claims of retaliation, she was terminated for legitimate, non-retaliatory reasons. *See Bagwell v. Morgan Cty. Comm'n,* No. 5:14-CV-00464-CLS, 2015 WL 13307343, at *10 (N.D. Ala. Oct. 28, 2015), *aff'd*, 676 F. App'x 863

(11th Cir. 2017) (noting that under Title VII, the Rehabilitation Act and the ADA, an employer can defeat a claim of discrimination if it is able to assert a legitimate, non-discriminatory, and non-pretextual reason for the employee's termination). Here, the OPD had established policies in place governing alternative duty assignments. Specifically, Article 23.6 of the Collective Bargaining Agreement provides that if an employee's disability pension is denied and the employee does not request to return to full duty, he or she "will be terminated on the last day of the month in which the final board decision was rendered." (Pl. Depo. Ex. 26, p. 3). Plaintiff's disability pension was denied by the Board, and Plaintiff refused to return to full time duty. Consequently, Plaintiff was terminated pursuant to the Collective Bargaining Agreement and not for any retaliatory reason.

### E.  Plaintiff Cannot Establish a *Prima Facie* Case for Workers' Compensation Retaliation

Summary judgment should be entered in Defendant's favor on Count VII of Plaintiff's Amended Complaint because Plaintiff cannot satisfy her *prima facie* case of workers' compensation retaliation. "In order to establish a *prima facie* retaliation case under Section 440.205, the Plaintiff must demonstrate the following elements: "(1) a statutorily protected expression; (2) an adverse employment action; and (3) a causal connection between participation in the protected expression in the adverse action." *Andrews v. Direct Mail Express, Inc.*, 1 So. 3d 1192, 1193 (Fla. 5th DCA 2009). "A plaintiff may plead the causation element by alleging facts that show a statutorily protected activity and an adverse employment action were temporally proximate, but temporal proximity alone is insufficient unless the events are very close." *McGuire v. United Parcel Serv.*, Inc., 763 F. App'x 890, 898 (11th Cir. 2019) (quotation omitted).

Here, Plaintiff made claims for workers' compensation on October 27, 2015 and December 7, 2017; however, Plaintiff was terminated on May 31, 2019, a year-and-a-half after her second workers' compensation claim. Such a large gap of time has repeatedly been found to be insufficient

to state a claim for workers' compensation retaliation. *See, e.g.*, *Gonzales v. Pasco Cty. Bd. of Cty. Comm'rs,* No. 8:11-cv-1397-T-30TGW, 2013 WL 179948, at *9 (M.D. Fla. Jan. 17, 2013) (stating that there was no causal connection due to the five-month gap between the application for workers' compensation benefits and the alleged adverse employment action); *Gillman v. Okaloosa Cty. Fla.*, 58 F. Supp. 3d 1305, 1312–13 (N.D. Fla. 2014) (ten-month gap); *Thompson v. Silver Beach Towers Prop. Owners Ass'n, Inc.*, No. 3:14-cv-217/MCR/CJK, 2015 WL 9854801, at *5 (N.D. Fla. Dec. 8, 2015), *report and recommendation adopted*, 2016 WL 225684 (N.D. Fla. Jan. 19, 2016) (five-month gap). Thus, Plaintiff cannot show a causal connection between her claim for workers' compensation benefits and her termination, and Defendant is entitled to summary judgment on Count VII.

## CONCLUSION

Summary judgment is appropriate for Defendant because: (1) the Board, a separate legal entity from Defendant, denied Plaintiff's Disability Pension Application; (2) Plaintiff cannot establish that she is disabled or was perceived as disabled, (3) Plaintiff did not suffer an adverse employment action on the basis of her gender or alleged disability, (4) there is no casual connection between Plaintiff's engagement in protected activity and her termination, and (5) Plaintiff was terminated pursuant to a Collective Bargaining Agreement and for legitimate non-discriminatory and non-retaliatory reasons.

WHEREFORE, Defendant respectfully requests this honorable Court grant its Motion for Summary Judgment, enter judgment in favor of Defendant as to Plaintiff's Amended Complaint, and award such relief as the Court deems just and proper.[8]

---

[8] Because summary judgment should be entered in favor of Defendant with regard to Plaintiff's Amended Complaint, the issue of front pay is rendered moot.

Dated:  November 2, 2020     Respectfully submitted,

              /s/Susan Potter Norton
              Susan Potter Norton
              Florida Bar No. 0201847
              snorton@anblaw.com
              **Allen, Norton & Blue, P.A.**
              Steven Reardon
              Florida Bar No. 1003515
              sreardon@anblaw.com
              121 Majorca Avenue, Suite 300
              Coral Gables, FL 33134
              Tel: (305) 445-7801
              Fax: (305) 442-1578

              Sarah H. McDonald, Esq.
              Florida Bar No. 519022
              Assistant City Attorney
              City Attorney's Office
              City of Orlando
              400 South Orange Avenue
              Orlando, FL 32801
              Tel.: (407) 246-3470
              Fax: (407) 246-2854
              Email: sarah.mcdonald@cityoforlando.net

              *Counsel for Defendant*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on the **<u>2nd day of November 2020</u>**, I electronically filed the forgoing with the Clerk of the Court by using the CM/ECF system, which will send notice of the electronic filing to: Jeffrey E. Appel, Esq., Appel Law Group, P.A., P.O. Box 6097, Lakeland, Florida 33807.

/s/Susan Potter Norton
Attorney