UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DOLORES BRACERO,

    Plaintiff,

v.                                        Case No: 6:19-cv-1657-WWB-GJK

THE CITY OF ORLANDO,

    Defendant.
                                     /

**ORDER**

THIS CAUSE is before the Court on Defendant's Motion for Summary Judgment (Doc. 38). Plaintiff did not file a response and the time to do so has now passed. Defendant's Motion will be granted.

**I.    BACKGROUND**

Plaintiff became employed by the Orlando Police Department ("**OPD**") on August 16, 2005. (Doc. 37-4 at 4). OPD officers are represented by the Orlando Lodge #25, Fraternal Order of Police, Inc. ("**FOP**"). (Doc. 37-7 at 4). Thus, Plaintiff, as an OPD officer, is subject to the terms and conditions of the Collective Bargaining Agreement ("**CBA**") entered into between the OPD and the FOP, which governs, among other things, Plaintiff's pay scale and raises. (Doc. 37-1 at 73:10–12; Doc. 37-6 at 13–15; Doc. 37-7 at 1, 5–9).

Plaintiff injured her right hand and wrist on October 27, 2015, during an on-duty training focused on combative handcuff arrestees. (Doc. 37-4 at 4, 10). Plaintiff filed a workers' compensation claim the same day, and a second claim on December 7, 2017. (Doc. 21, ¶ 105). As a result of Defendant's actions after her injury, on June 19, 2018,

Plaintiff filed a charge of discrimination with the Equal Opportunity Employment Commission ("**EEOC**"), alleging that she was denied medical pension benefits and promotions and was subjected to different terms and conditions of employment, harassment, and intimidation. (Doc. 37-4 at 2–3). More specifically, she alleged that she was forced to work from a storage closet on mainly administrative and secretarial tasks, denied a work vehicle to carry out assigned duties, denied authentic, substantive performance reviews from her superiors, and denied a promotion to sergeant despite scoring at the same level or above her non-disabled counterparts. (*Id.* at 3). On June 17, 2019, the EEOC issued its Dismissal and Notice of Rights indicating it was unable to conclude that the information provided by Plaintiff established violations of law. (Doc. 37-3 at 56). As a result, Plaintiff filed this lawsuit against Defendant alleging various claims for discrimination and retaliation.

First, Plaintiff complains that after her injury she was placed in mediocre and degrading positions despite Defendant's ability to open an alternative position for her. (Doc. 37-1 at 61:5–18). On November 10, 2015, Plaintiff was placed on alternative duty in the IRIS room, watching surveillance cameras. (Doc. 37-1 at 19:10–12; Doc. 37-5 at 47). Prior to her injury, Plaintiff worked the night shift. (Doc. 37-1 at 82:19–20). After her injury, the only light-duty night shift Plaintiff could work was the IRIS camera and she did not request that position or any night position once she was switched to the day shift. (*Id.* at 82:20–83:4, 83:20–84:5). Pursuant to OPD policy, alternative duty assignments are at the sole discretion of management and are generally utilized on an interim basis. (Doc. 37-7 at 10–11).

At some point, Plaintiff was reassigned from IRIS to the information desk, which was referred to as the "fish bowl." (Doc. 37-1 at 19:10–12, 21–24). OPD was known to assign employees with disciplinary issues to the information desk. (*Id.* at 68:4–9). Plaintiff was also assigned to scan documents in the professional standards office and to transport people from the parking lot to the building. (*Id.* at 19:24–20:4). After two to three weeks, Plaintiff was removed from transporting people and returned to the information desk upon advising a supervisor that she was unable to shift gears with her injured hand. (*Id.* at 117:4–15). Ultimately, Plaintiff was assigned to information technology ("**IT**"). (*Id.* at 20:5–7).

In IT, as part of a new computer rollout project, Plaintiff directed and managed the delivery of IT equipment, computer training, and compliance. (*Id.* at 18:4–9). She collaborated with City Hall project managers to coordinate schedules, workshops, and deployment details. (*Id.* at 18:12–15). She also tracked the project and analyzed compliance metrics for management. (*Id.* at 18:16–18). Plaintiff used her personal vehicle to distribute laptops to the training center, but she chose not to seek reimbursement for her mileage. (*Id.* at 24:13–16, 25:12–23; Doc. 37-2 at 190:4–7, 10–12). While working in IT, Plaintiff was assigned to a room that had previously been used as a storage space. (Doc. 37-1 at 22:15–17). After she complained, one of her supervisors put in carpet and office furniture. (*Id.* at 22:20–25, 125:19–126:2, 16–20). Despite her contention that Defendant could have opened an alternative position for her, Plaintiff could not provide a specific example of OPD creating an alternative position for an employee, other than the one created for her in order to keep her on light duty. (Doc. 37-1 at 61:19–20; Doc. 37-2 at 191:14–17).

3

Plaintiff was qualified to use a handgun prior to her injury in October 2015. (*Id.* at 30:18–22). As a law enforcement officer, Plaintiff was required to qualify with firearms every two years, and she is unable to do so as a result of her injury. (*Id.* at 30:25–31:4; Doc. 37-5 at 67). If an officer fails to demonstrate proficiency under the required firearms qualifications standard, he or she "shall not perform the duties of a sworn officer." Fla. Admin. Code Rule 11B-27.00212(14)(a). The position of sergeant is a sworn position requiring an individual in the position to be proficient in the use of a firearm. (Doc. 37-6 at 54–56). Nonetheless, Plaintiff applied for the position of sergeant after her injury. (Doc. 37-1 at 31:5–10).

The Sergeant's exam is administered every two years and candidates who score well enough on the exam are placed on the Sergeant's Promotional List for four years. (Doc. 37-7 at 1). An officer's exam result, however, is not the only factor considered in the promotion process. (*Id.* at 2). Notably, two females, not on light duty, were promoted to sergeant before Plaintiff filed her charge of discrimination. (Doc. 37-1 at 87:10–18). Plaintiff was not aware of anyone promoted to sergeant while on permanent light duty and unable to use a firearm. (*Id.* at 32:8–11). In fact, no one, male or female, was promoted while they were on permanent, light duty or accommodated in that manner. (*Id.* at 52:17–21; Doc. 37-2 at 198:24–199:1).

Plaintiff maintains the belief that Defendant could have accommodated her by making her a supervisor in the Criminal Investigations Division ("**CID**") and not requiring her to go out into the field. (Doc. 37-2 at 198:18–23). She admits, however, that she knows of no one placed in CID while on alternative duty who had not been previously assigned to that division. (Doc. 37-1 at 55:4–12, 24–56:5, 22–24). Further, although

4

Plaintiff complains that she lost the income differential provided for night shift, she admitted she did not ask to be returned to the night shift. (*Id.* at 83:20–84:3).

In addition to the changes in her position, Plaintiff complains that Defendant discriminated against her by denying her request to maintain an assigned police vehicle after she was injured. (*See, e.g.*, Doc. 21, ¶ 22). However, beginning in 2015, Defendant's alternative duty assignment policy prohibited those on alternative duty for longer than thirty days from participating in the assigned vehicle program. (Doc. 37-7 at 2, 11). One officer, Kimberly Brewster, was on alternative duty prior to the revised policy and was allowed to keep her assigned vehicle. (*Id.* at 2). Although, Plaintiff complained that other male officers on light duty were able to keep their take-home cars, she did not know specifics such as how long the officers were on limited duty or when their light duty started. (Doc. 21, ¶ 22; Doc. 37-1 at 50:1–22, 103:16–104:3). Plaintiff was provided a vehicle assigned to the Recruiting Section to use during work hours. (Doc. 37-5 at 40).

Plaintiff also claims that she was denied authentic, substantive performance reviews from her superiors, which, she argues, could cause her to be written up or fired or affect her compensation. (Doc. 37-1 at 52:22–53:11). However, Article 43 of the CBA provides for compensation based upon an officer's respective grade, without considering performance reviews. (Doc. 37-7 at 1). Defendant found Plaintiff had met her standards and she was given wage increases accordingly. (Doc. 37-1 at 53:16–22; 54:2–3). Additionally, Plaintiff emphasizes that her supervisor denied her request to attend an interrogations class until the union became involved. (*Id.* at 58:18–59:1). Plaintiff was ultimately able to attend the class. (*Id.* at 59:6–7). Finally, Plaintiff asked, unsuccessfully,

5

that handicap buttons be installed on some of the heavier doors. (*Id.* at 65:21–25, 66:4–9, 14–15).

Plaintiff was notified on August 9, 2016, that under OPD Policy & Procedure 1619.5, employees on alternative duty for one continuous year or for twelve cumulative months in an eighteen-month period had to return to full duty or would otherwise be terminated. (Doc. 37-5 at 47). Plaintiff was reminded she would reach one year of alternative duty on November 10, 2016, and that Article 23.6 of the CBA provides that employees who are unable to perform the required duties of their rank because of a line of duty injury will not be terminated for one hundred eighty days following their submission of their disability pension application. (*Id.* at 47–48). Plaintiff filed her application for disability pension on September 1, 2016.[1] (Doc. 37-6 at 17). In March 2017, Plaintiff's request to be placed in a long-term alternative duty assignment was approved, providing her additional time to rehabilitate and return to full duty, but also rendering her ineligible for a pension until she either refiled for a change in her medical condition or requested removal from the long-term alternative duty assignment. (Doc. 37-5 at 45–46, 65–66).

Plaintiff resubmitted her pension application on December 4, 2017. (Doc. 37-6 at 17). On February 12, 2018, the Board was notified that a full-time limited duty position, the IT position, was available for Plaintiff without a reduction in pay or benefits. (Doc. 37-5 at 64; Doc. 37-6 at 19). Regarding the pension application, two doctors who examined

---

[1] The Board of Trustees ("**Board**"), not the OPD, administers the Police Pension Plan. *See* Orlando, Fla., Mun. Code ch. 12, art. 1, § 3. The Board is a separate legal entity from the OPD with "all powers and responsibilities conferred upon it by law including the power to bring and defend lawsuits of every kind, nature and description." *See id.* § 2; (Doc. 37-1 at 39:16–20, 25–40:3, 63:13–14).

Plaintiff determined that she could return to work with either few restrictions or no restrictions. (Doc. 37-4 at 14–15, Doc. 37-5 at 50). After reviewing Plaintiff's medical records, a third doctor cleared Plaintiff for duty without restrictions. (Doc. 37-6 at 12). On May 30, 2019, the Board, relying on the doctors' opinions that Plaintiff could return to full-duty status, denied her application for her pension. (Doc. 37-1 at 47:14–19; Doc. 37-2 at 178:16–17; Doc. 37-4 at 4–8). Thereafter, Defendant ordered Plaintiff to return to full time work or be terminated. (Doc. 37-1 at 84:23–85:1). Because Plaintiff did not request to return to full duty, she was terminated on May 30, 2019, pursuant to Article 23 of the CBA. (Doc. 37-1 at 13:19–21; Doc. 37-2 at 178:16–25).

As a result, Plaintiff alleges that Defendant has discriminated against female and disabled law enforcement officers and retaliated against her for making complaints and for submitting workers' compensation claims. Based thereon, she seeks damages for alleged violations of the Rehabilitation Act, 29 U.S.C. § 701 *et seq.* (Count I); Americans with Disabilities Act ("**ADA**"), 42 U.S.C. § 12111 *et seq.* (Count II); Title VII of the Civil Rights Act of 1964 ("**Title VII**"), 42 U.S.C. § 2000e *et seq.* (Counts III & V); the Florida Civil Rights Act ("**FCRA**"), Fla. Stat. § 760.01 *et seq.* (Counts IV & VI); and section 440.205 of the Florida Statutes (Count VII). (*See generally* Doc. 21).

II.  **LEGAL STANDARD**

Summary judgment is appropriate when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it may "affect the outcome of

the suit under the governing law." *Id.* "The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Allen v. Bd. of Pub. Educ.,* 495 F.3d 1306, 1313–14 (11th Cir. 2007). Stated differently, the moving party discharges its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

However, once the moving party has discharged its burden, "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quotation omitted). The nonmoving party may not rely solely on "conclusory allegations without specific supporting facts." *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985). Nevertheless, "[i]f there is a conflict between the parties' allegations or evidence, the [nonmoving] party's evidence is presumed to be true and all reasonable inferences must be drawn in the [nonmoving] party's favor." *Allen*, 495 F.3d at 1314.

As in this case, where the non-moving party fails to respond to the moving party's assertion of a properly supported fact, the Court considers the fact undisputed. Fed. R. Civ. P. 56(c), (e); *see also Menster v. Allstate Ins. Co.*, No. 5:19-cv-77-Oc-30PRL, 2020 WL 5534462, at *1 n.1 (M.D. Fla. Aug. 5, 2020). Further, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments." *See Resolution Tr. Corp. v. Dunmar*, 43 F.3d 587, 599 (11th Cir. 1995) (citation omitted).

### III.   DISCUSSION

Defendant argues that summary judgment is appropriate because: (1) Plaintiff cannot establish she is disabled or was perceived as disabled and is not a "qualified individual"; (2) Plaintiff did not suffer an adverse employment action on the basis of her gender or alleged disability; (3) there is no causal connection between Plaintiff's engagement in protected activity and her termination; and (4) Plaintiff was terminated pursuant to a CBA for legitimate non-discriminatory and non-retaliatory reasons.

#### A.   Pension

First Defendant argues that the Board denied Plaintiff's disability pension application, not Defendant. Because it is undisputed that the Board is a separate legal entity and that the OPD had no control over Plaintiff's pension, *see* Orlando, Fla., Mun. Code ch. 12, art. 1, § 2, any allegations that the OPD discriminated or retaliated against Plaintiff by denying her petition are without merit.

#### B.   Counts I and II: Rehabilitation and ADA

Second, Defendant argues that Plaintiff cannot establish a prima facie case under the Rehabilitation Act or the ADA because she is unable to demonstrate that she is disabled. To establish a claim of disability discrimination under Title II of the ADA, a plaintiff must establish "(1) that [s]he is a qualified individual with a disability; (2) that [s]he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of [her] disability." *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1083 (11th Cir. 2007). The legal standards that apply to determine liability under the Rehabilitation Act are the same as

9

those under the ADA, including the definition of disability.  See *Wolfe v. Postmaster Gen.*, 488 F. App'x 465, 466–67 (11th Cir. 2012).

"Disability," is defined as "(A) a physical or mental impairment that substantially limits one or more major life activities of [the] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Id.* at 467 (emphasis omitted) (quoting 42 U.S.C. § 12102(1)); *see also* 29 U.S.C. § 794(d).  To determine if Plaintiff is disabled, the Court (1) considers "whether [the alleged disability] was a physical impairment"; (2) "identif[ies] the life activity upon which [the plaintiff] relies" and "determine[s] whether it constitutes a major life activity"; and (3) "ask[s] whether the impairment substantially limited the major life activity." *Hudson v. Tyson Farms, Inc.*, 769 F. App'x 911, 915 (11th Cir. 2019) (quotation omitted).  Indeed, "[a] physical impairment, standing alone, . . . is not necessarily a disability as contemplated by the ADA." *Id.* at 916 (quoting *Gordon v. E.L. Hamm & Assocs., Inc.*, 100 F.3d 907, 911 (11th Cir. 1996)).  "The relevant time period for assessing the existence of a disability, so as to trigger the ADA's protections, is the time of the alleged discriminatory act."  *Equal Emp. Opportunity Comm'n v. STME, LLC*, 938 F.3d 1305, 1314 (11th Cir. 2019).

While Plaintiff's ability to work may not have, in fact, been substantially limited, Defendant certainly regarded her as such.  "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment *whether or not the impairment limits or is*

10

*perceived to limit a major life activity*."[2]  42 U.S.C. § 12102(3)(A) (emphasis added). "Prohibited actions include but are not limited to refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment[.]" 29 C.F.R. § 1630.2(*l*)(1).  "The relevant inquiry in such cases is not the plaintiff's actual condition, but how the Defendant perceived [her] condition, including the reactions and perceptions of the persons interacting with or working with [her].'" *Equal Emp. Opportunity Comm'n v. Am. Tool & Mold, Inc.*, 21 F. Supp. 3d 1268, 1275 (M.D. Fla. 2014) (quotation omitted).  There is evidence that Defendant perceived Plaintiff as having a physical impairment because it placed her in light-duty positions until she was cleared to return to work with no restrictions.

Even so, Plaintiff's ADA and Rehabilitation claims fail because the undisputed evidence establishes that Plaintiff was not a qualified individual as she could not perform an essential function of her positions as a sworn law enforcement officer.  A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Monroe v. Fla. Dep't of Corr.*, 793 F. App'x 924, 926–27 (11th Cir. 2019) (quoting 42 U.S.C. § 12111(8)).  If a plaintiff is unable to perform an essential function of her job, even

---

[2] The Court notes that the cases cited by Defendant in its Motion were all decided before the amendments to the ADA, which became effective January 1, 2009, and abrogated the prior authority holding that to be "regarded as disabled" the plaintiff's employer had to perceive the plaintiff "as being unable to work in a broad class of jobs." *Andrews v. City of Hartford*, 700 F. App'x 924, 926 (11th Cir. 2017) (quotation omitted). Because the majority of the events giving rise to Plaintiff's claims occurred after the effective date of the amendment, the Court must apply the most current version of the ADA. *Id.*

with a reasonable accommodation, she is not a qualified individual under the ADA. *Id.* at 927 (citation omitted). An accommodation is *not* reasonable if it would eliminate an essential function of the plaintiff's job. *Anderson v. Embarq/Sprint*, 379 F. App'x 924, 928 (11th Cir. 2010).

A law enforcement officer is defined as "any person who is elected, appointed, or employed full time by any municipality . . . who is vested with authority to bear arms and make arrests; and whose primary responsibility is the prevention and detection of crime or the enforcement of the penal, criminal, traffic, or highway laws of the state." Fla. Stat. § 943.10(1). Furthermore, all law enforcement officers are required to demonstrate proficiency in firearms. Fla. Stat. § 943.12(16). If an officer fails to demonstrate proficiency under the required firearms qualifications standard, he or she "shall not perform the duties of a sworn officer." Fla. Admin. Code Rule 11B-27.00212(14)(a). Here, it is undisputed that Plaintiff was unable to use a firearm, an essential function of a sworn law enforcement officer, and thus, an accommodation regarding such inability would not be reasonable. *See Frazier v. Simmons*, 254 F.3d 1247, 1261 (10th Cir. 2001) (concluding that the ability to carry a firearm was essential to job of an investigator and that reassigning functions that may require the use of a firearm was not a reasonable accommodation); *Heard v. Union City*, No. 1:15-cv-2228-MHC-JKL, 2017 WL 4334243, at *10 (N.D. Ga. May 23, 2017) ("[A] law enforcement officer who is unable to perform a necessary task, even if that task makes up an indeterminately small portion of his work, may not be a qualified individual under the ADA."), *report and recommendation adopted*, 2017 WL 4475926 (N.D. Ga. July 25, 2017). Accordingly, Defendant's Motion as to Counts I and II will be granted.

### C.	Counts III and IV: Gender Discrimination Under Title VII or FCRA

In order to establish a prima face case of discrimination, Plaintiff must demonstrate: (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees outside of her class more favorably; and (4) she was qualified to do the job. *Stinson v. Pub. Serv. Tel. Co.*, 486 F. App'x 8, 10 (11th Cir. 2012) (citing *McCann v. Tillman*, 526 F.3d 1370, 1373 (11th Cir. 2008)). In a discrimination claim, "an adverse employment action is a serious and material change in the terms, conditions, or privileges of employment." *Cogar v. Citrus Cnty. Sheriff's Off.*, No. 20-11003, 2021 WL 531304, at *5 (11th Cir. Feb. 12, 2021) (quoting *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1203 (11th Cir. 2013)).

At the outset, Plaintiff's termination can be disposed of as an adverse employment action because Plaintiff had not been terminated when she filed her EEOC complaint. A plaintiff must exhaust her administrative remedies by filing a timely charge of discrimination with the EEOC. *Stamper v. Duval Cnty. Sch. Bd.*, 863 F.3d 1336, 1339 (11th Cir. 2017). While judicial claims are allowed if they "amplify, clarify, or more clearly focus the allegations in the EEOC complaint," allegations of new acts of discrimination are inappropriate. *Gregory v. Ga. Dep't of Hum. Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004) (quotation omitted). In this case, Plaintiff's termination was based on evidence that she was *not* disabled and could return to work as a law enforcement officer without restrictions but refused, whereas her EEOC complaint was founded on adverse employment actions taken based on Plaintiff's gender.

The undisputed evidence establishes the alternative duty assignments, training cancellation, and performance reviews do not constitute adverse employment actions. Plaintiff maintained her existing pay and benefits when she was placed on alternative duty. In fact, OPD created a sworn position for Plaintiff so that she could maintain her current pay and benefits. *Shepard v. United Parcel Serv., Inc.*, 470 F. App'x 726, 732 (11th Cir. 2012) (finding no adverse employment action where responsibilities of new position were defined in collective bargaining agreement and did not result in any change to plaintiff's compensation, hours of work, or benefits); *Brook ex rel. Estate of Waiters v. City of Palmetto*, No. 8:01-cv-2430-T-26TBM, 2005 WL 8160162, at *7 (M.D. Fla. July 15, 2005) (granting summary judgment where employee was laterally transferred with no loss of salary or benefits). As for the training cancellation and performance reviews, Plaintiff ultimately attended the training class and received raises without any performance reviews. Thus, there is no evidence that the delay or lack of performance reviews affected her salary, title, position, or job duties. *Akins v. Fulton Cnty.*, 420 F.3d 1293, 1300 (11th Cir. 2005) (explaining that an employer's conduct constitutes an adverse employment action if it "negatively affects an employee's salary, title, position, or job duties"); *see also Martin v. Eli Lilly & Co.*, 702 F. App'x 952, 956 (11th Cir. 2017) (finding performance evaluations did not constitute an adverse employment action where evidence was insufficient to determine how defendant awarded salary increases or that the plaintiff did not receive new position based on negative performance reviews).

The denial of a take-home work vehicle cannot support her claim because Plaintiff has failed to demonstrate that the OPD's assigned-vehicle policy predating Plaintiff's injury was applied differently to disabled men. Plaintiff testified that she did not know the

specific circumstances of the two men she identified as keeping an assigned vehicle while on light duty. Moreover, Plaintiff was provided a vehicle during working hours, and an opportunity to be reimbursed for the use of her private vehicle.

Finally, Plaintiff was not qualified for the position of sergeant because she was unable to use a firearm. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004) (explaining that being qualified for the promotion sought is an element of discriminatory failure to promote), *abrogated on other grounds by Lewis v. Union City*, 918 F.3d 1213, 1218 (11th Cir. 2019) (en banc); *see also Brown v. Snow*, 440 F.3d 1259, 1266 (11th Cir. 2006) (finding discrimination claim failed where plaintiff did not provide any evidence either that he was qualified for promotions or that his lowered evaluation score was the reason he was denied promotions). Accordingly, Defendant's Motion will be granted as to Counts III and IV.

### D. Counts V and VI: Retaliation under Title VII and the FCRA

Title VII and the FCRA protect an employee against retaliation by their employer because the employee has opposed any practice prohibited by Title VII or participated in any manner in any investigation, proceeding, or hearing under Title VII. *James v. City of Montgomery*, 823 F. App'x 728, 734 (11th Cir. 2020). Because there is no direct[3] evidence that Plaintiff was subjected to adverse employment actions in retaliation for her protected activity, the Court utilizes the *McDonnell-Douglas*[4] burden-shifting framework to address the circumstantial evidence before it. *Id.* (citation omitted). To that end,

---

[3] *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997) ("Evidence that only suggests discrimination, or that is subject to more than one interpretation does not constitute direct evidence." (internal citations omitted)).

[4] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

15

Plaintiff must first present a prima facie case of retaliation and discrimination. *McDonnell Douglas*, 411 U.S. at 802. To establish a prima facie case of retaliation Plaintiff must demonstrate that 1) she engaged in statutorily protected activity; 2) she suffered an adverse employment action; and 3) there is a causal link between the protected activity and the adverse action. *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1328 (11th Cir. 1998). If plaintiff presents evidence of an adverse employment action in her retaliation claims, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the action. *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1162 (11th Cir. 2006). An employer is entitled to summary judgment where it proffers a legitimate, non-retaliatory reason for the adverse employment action and the plaintiff fails to come forward with evidence inconsistent with the proffered reason. *Chapman v. AI Transp.*, 229 F.3d 1012, 1024–25 (11th Cir. 2000).

Although Plaintiff cannot establish an adverse employment action to support her discrimination claims, "discrimination and retaliation claims are not coterminous . . . the standard for retaliation is more relaxed than its discrimination counterpart, and courts are no longer to 'treat[ ] the anti-retaliation provision as forbidding the same conduct prohibited by the anti-discrimination provision,' or to 'limit[ ] actionable retaliation to so-called ultimate employment decisions.'" *Floeter v. City of Orlando*, No. 6:05-cv-400-Orl-22KRS, 2007 WL 9719289, at *8 (M.D. Fla. Feb. 18, 2007) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006)); *see also Smith v. Fla. A & M Univ. Bd. of Trs.*, 831 F. App'x 434, 441 (11th Cir. 2020) ("[T]his is a more liberal view of what constitutes an adverse employment action than in the discrimination context." (quotation omitted)). Rather, "[t]o prove an adverse employment action in the context of a retaliation

claim, the 'plaintiff must show that a reasonable employee would have found the challenged action materially adverse,' meaning that 'it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Hamner v. Tuscaloosa Cnty. Sch. Sys.*, No. 7:18-cv-01838-LSC, 2021 WL 615203, at *9 (N.D. Ala. Feb. 17, 2021) (quoting *Burlington N.*, 548 U.S. at 68). Thus, "[a]n adverse employment action need not be as serious as outright termination." *Id.* (citing *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998)). Further, "the cumulative weight of numerous individual incidents can be considered in determining whether the employee experienced materially adverse action." *Id.* (quoting *Putman v. Sec'y, Dep't of Veterans Affs.*, 510 F. App'x 827, 831 (11th Cir. 2013)); *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002).

Even if the Court found, based on the more liberal standard, that placing Plaintiff at the "fish bowl," giving her tasks that are mostly clerical, requiring her to use her personal car while on duty, making her work in a storage closet, denying her request to attend training, and declining to place her in CID or to promote her to sergeant may collectively amount to an adverse employment action, Plaintiff has not rebutted Defendant's evidence of legitimate, non-retaliatory reasons for its actions. Specifically, Defendant has asserted that its actions were either compelled by the CBA or the law. Finding that such assertion meets the exceedingly-light burden of a legitimate, non-discriminatory, non-retaliatory reason, the burden shifts back to Plaintiff to introduce probative evidence of pretext. *Brooks*, 446 F.3d at 1163. Because Plaintiff failed to respond to the Motion, she has not presented any evidence to rebut Defendant's evidence that the actions taken were

17

legitimate and non-retaliatory. Thus, Defendant's Motion as to Counts V and VI is granted.

### E. Count VII: Workers' Compensation

Finally, Plaintiff has not presented evidence of a causal connection between her workers' compensation claims and her termination. "In order to establish a *prima facie* retaliation case under section 440.205, the plaintiff must demonstrate the following elements: (1) a statutorily protected expression; (2) an adverse employment action; and, (3) a causal connection between participation in the protected expression and the adverse action." *Andrews v. Direct Mail Express, Inc.*, 1 So. 3d 1192, 1193 (Fla. 5th DCA 2009). "A plaintiff can establish a causal relationship between her statutorily protected activity and an adverse employment action by showing a 'close temporal proximity' between the two events." *Jackson v. Agency for Pers. with Disabilities Fla.*, 608 F. App'x 740, 743 (11th Cir. 2015) (quoting *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004)). However, "[m]ere temporal proximity, without more. . . must be 'very close.'" *Id.* (quoting *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007)). For example, three to four months between the statutorily protected expression and the adverse employment action is insufficient to support an inference of causation. *Id.* "If there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law." *Higdon*, 393 F.3d at 1220.

Plaintiff made claims for workers' compensation on October 27, 2015, and December 7, 2017. Plaintiff was terminated a year-and-a-half after her second workers' compensation claim. Such a large time gap is insufficient alone to establish a causal

connection between the workers' compensation claim and the termination. *See Jackson*, 608 F. App'x at 743; *Thomas*, 506 F.3d at 1364. Therefore, Defendant's Motion as to Count VII will be granted.

## IV. CONCLUSION

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment (Doc. 38) is **GRANTED**.

2. Defendant's Motion for Telephonic Status Conference (Doc. 41) is **DENIED as moot**.

3. The trial status conference scheduled for March 9, 2021, is **CANCELLED**.

4. The Clerk is directed to enter judgment in favor of Defendant and against Plaintiff, providing that Plaintiff shall take nothing on her claims against Defendant. Thereafter, the Clerk is directed to close the case.

**DONE AND ORDERED** in Orlando, Florida on March 8, 2021.

_____
WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record